**NO ARGUMENT DATE SET**
**No. 12-7050**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**JAMES WINSTEAD**, *et al*,

                                    *Appellants*,

**v.**

**DISTRICT OF COLUMBIA**, *et al*,

                                    *Appellees*.

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**D.D.C. CASE NO. 1:04-cv-00887 (JMF)**

---

**<u>APPELLANTS' BRIEF AND APPENDIX</u>**

                        Kirk D. Williams, Esquire #54270
                        LAW OFFICES OF KIRK D. WILLIAMS
                        1629 K Street, NW
                        Suite 300
                        Washington, DC 20006
                        (202) 726-0480
                        kdwatlaw@lycos.com

                        Counsel for Appellants

**NO ARGUMENT DATE SET**
**No. 12-7050**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**JAMES WINSTEAD, *et al*,**

**                                                    *Appellants*,**

**v.**

**DISTRICT OF COLUMBIA, *et al*,**

**                                                    *Appellees*.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**D.D.C. CASE NO. 1:04-cv-00887 (JMF)**

---

**<u>CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES</u>**

COMES NOW Appellants, James Winstead, *et al*, through counsel, and files

this Certificate as to Parties, Rulings and Related Cases.

**A. Parties and Amici**

The parties and Amici are as follows: James Winstead, Juanita Irving,

Patricia Hayden, Sheila Owens, Denise Downing, Louis Beale, George Morgan,

Mary Waley, Ruby Davis, Tara Rogers, Patricia Newby, the Estate of Reginald

i

Rasheed and the Estate of John Lyles were plaintiffs below and all but Ruby Davis are the appellants here.  The District of Columbia, Mayor Vincent C. Gray, and James Jacobs were defendants below and are appellees here.  Duncan Norman Stevens, Esquire for the "Lightfoot Plaintiffs" filed an amicus brief below.

## B. Rulings Under Review

The rulings under review consist of the rulings of the United States District Court for the District of Columbia, the Honorable John M. Facciola presiding, Dist. Ct. No. 1:04-cv-00887 are as follows: Appellants appeal the judgment entered on January 6, 2012, "Findings of Fact" [D.D.C. Dkt. No. 212] (Reproduced: Appendix 1–41) and unpublished; "Conclusions of Law" [D.D.C. Dkt. No. 213] (Reproduced: Appendix 42–61) and published as *Winstead v. District of Columbia*, 840 F.Supp. 149 (D.D.C. 2012); and May 17, 2012 "Memorandum Order" [D.D.C. Dkt. No. 219] (Reproduced: Appendix 67–69) and unpublished.

## C. Related Cases

The related cases are as follows: This case has not been before this or any other court.  There are no related cases.

Respectfully Submitted,

LAW OFFICES OF KIRK D. WILLIAMS

Dated:02/17/2013                By:_____/s/_____
                                Kirk D. Williams, Esquire #54270
                                1629 K Street, NW
                                Suite 300
                                Washington, DC 20036
                                (202) 726-0480
                                kdwatlaw@lycos.com

                                Counsel for Appellants

**TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES . . . . . . i

TABLE OF CONTENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  viii

STATEMENT OF ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      A.    Procedural due process claims are measured in accordance with
           *Mathews v. Eldridge*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

           i)    In determining the duration of the plaintiffs' deprivations, the
                district court must determine whether deprivation procedures
                are deficient not whether deprivations are justified. . . . . . . . 16

      B.    The District's inaction in the face of the plaintiffs' lengthy
           deprivations of benefits without evidentiary hearings gives rise to or
           endorses a policy or custom under *Monell v. Department of Social
           Services*... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

           i)    The District clearly knew that lengthy deprivations of disability
                benefits without some form of adjudicatory hearing would
                violate procedural due process. . . . . . . . . . . . . . . . . . . . . . . . 21

ii)     The District clearly was aware of the plaintiffs' lengthy
        deprivations of benefits without evidentiary hearings.  . . . . . 24

iii)    The District's inaction in the face of the plaintiffs' lengthy
        deprivations of benefits without evidentiary hearings gives rise
        to or endorses a policy or custom under *Monell*..  . . . . . . . . . 27

C.      As a beneficiary specified by the Act, Tiara Rasheed is party of
        interest who may substitute for her deceased father. . . . . . . . . . . . . 29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

APPENDIX TO BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ix

## TABLE OF AUTHORITIES

* *Carey v. Piphus*, 435 U.S. 247 (1978))  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21

 *City of Canton v. Harris*, 489 U.S. 378 (1989)  . . . . . . . . . . . . . . . . . . . . . . . 20, 27

 Civil Rights Act of 1871, 42 U.S.C. § 1983  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

* *Daskalea v. District of Columbia*, 227 F.3d 433

     (D.C. Cir. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22, 23, 26, 28

District of Columbia Merit Personnel System, D.C. Code §§ 1-623.1

     *et seq*. [Formally D.C. Code §§ 1-624.1 *et seq*.]  . . . . . . . . . . . . . . . . . . . . . 2

D.C. Code § 1-623.02  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

D.C. Code § 1-623.09[1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 29

_____

[1]Reproduced: Appendix (hereinafter "App.") 132–134.

D.C. Code § 1-623.24 (Current through December 8, 2003)[2] . . . . . . . . . . . . . . . 3

Disability Compensation Effective Administration Amendment Act of 2004,

D.C. Act 15-685, 52 D.C. Reg. 1449 (Jan. 4, 2005) . . . . . . . . . . . . . . . . . . . . . . . 4

District of Columbia Administrative Procedure Act ("DCAPA"),

D.C. Code §§ 1-501 et seq. (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

\* *Lightfoot v. District of Columbia*, 448 F.3d 392 (D.C. Cir. 2006)

       (*Lightfoot Appeal*) . . . . . . . . . . . . . . . . . . . . 4, 14, 16, 17, 18, 19, 22, 23, 27

*Lightfoot v. District of Columbia*, 355 F.Supp.2d 414 (D.D.C. 2005)

       (*Lightfoot III*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lightfoot v. District of Columbia*, 339 F.Supp.2d 78 (D.D.C. 2004)

       (*Lightfoot II*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 28

 \* *Lightfoot v. District of Columbia*, USDA CA No. 01-1484

       (October 29, 2001) (*Lightfoot I*)[3] . . . . . . . . . . . . . . . 5, 15, 18, 19, 22, 23, 27

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) . . . . . . . . . . . 14, 15, 19, 28

\* *Mathews v. Eldridge*, 424 U.S. 319 (1976) . . . . . . . . . . . . . . 1, 12, 13, 14, 15, 18

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) . . . . . . . . . . . . . 14

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) . . . . . . . . . . 20, 28

---

[2]Reproduced: App. 135–137.

[3]Reproduced: App. 138–167.

*Newman v. District of Columbia*, 518 A.2d 698 (D.C. App. 1986) . . . . . . . . 3, 29

*Rogala v. District of Columbia*, 161 F.3d 44 (D.C. Cir. 1998) . . . . . . . . . . . . . 20

*Triplett v. District of Columbia*, 108 F.3d 1450 (D.C. Cir. 1997) . . . . . . . . . . . 21

*Ware v. Jackson County*, 150 F3d 873 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . 27

*Wolff v. McDonnell*, 418 U.S. 539 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Women Prisoners v. District of Columbia*, 93 F.3d 910 (D.C. Cir. 1996) . . . 21–22

*Women Prisoners v. District of Columbia*, 877 F.Supp. 634 (D.D.C. 1994)  21– 22

## STATEMENT OF JURISDICTION

The District Court for the District of Columbia exercised original

jurisdiction pursuant to 28 U.S.C. § 1331 as a civil action arising under the Due

Process Clause of the Fifth Amendment to the United States Constitution.  The

District Court for the District of Columbia, the Honorable John M. Facciola

presiding, filed its decision on January 6, 2012 and entered an order on May 17,

2012 denying Appellants' motion for reconsideration.  This Court has jurisdiction

pursuant to 28 U.S.C. § 636(c)(4) to review the district court's decision upon

Notice of Appeal.  Appellants' filed Notice of Appeal in this matter on June 12,

2012.  Appellants assert that this appeal is from a final order or judgment that

disposes of all parties' claims.

## **STATUTES**

### United States Constitution amendment V

No person shall be deprived of life, liberty or property without due process of the law.

### Title 42 U.S.C. 1983

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

### D.C. Code § 1-623.09[4]

### D.C. Code § 1-623.24

(Current through December 8, 2003)[5]

---

[4]Reproduced: App. 132–134.

[5]Reproduced: App. 135–137.

## STATEMENT OF ISSUES PRESENTED

1.     Whether the trial court committed reversible error failing to analyze the plaintiffs' procedural due process claims in accordance with *Mathews v. Eldrige.*

2.     Whether the trial court committed reversible error determining that the plaintiffs Winstead's, Beale's, Irving's, Rasheed's and Newby's deprivations were justified instead of determining whether the District's deprivation procedures were deficient.

3.     Whether no reasonable juror could reach the trial court's verdict that the plaintiffs' lengthy deprivations of benefits without evidentiary hearings were attributable to the negligence of a few District employees and not to a policy or custom of the District.

4.     Whether the trial court committed reversible error denying Tiara Rasheed's Motion to Substitute for her deceased father, Reginald Rasheed, because she was not a representative of his estate.

## STATEMENT OF THE CASE

On June 1, 2004, thirteen individuals (hereinafter "Plaintiffs") filed this federal action seeking damages pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 from the District of Columbia *et. al.* (hereinafter "Defendants or

District") for violations of constitutional and common law rights.[6]  Plaintiffs are recipients of disability benefits under the District of Columbia Merit Personnel System (hereinafter "Act"), D.C. Code §§ 1-623.1 *et seq*. [Formally D.C. Code § 1-624.1 *et seq*.], who contend that the District terminated, suspended, reduced or denied benefits and, thereafter, deliberately and with indifference toward their constitutional rights, unduly delayed processing their claims thereby depriving them of both access to the statutory adjudication procedures and continued receipt of disability benefits.  The district court rejected the plaintiffs' claims concluding that of the twelve who are parties to this appeal five suffered no deprivations and that the remaining seven failed to prove that the delays they suffered were so unreasonable as to violate due process or that the District was responsible for them.  App. 59.  The district court also denied Tiara Rasheed's motion to substitute for her deceased father, Reginald Rasheed, because she was not the representative of his estate.  App 59.

### Comprehensive Merit Personnel Act ("Act")

The District of Columbia provides disability compensation benefits to employees who suffer disability within the meaning of the Act.  The disability

---

[6]Plaintiff, Ruby Davis, was dismissed at trial and is not a party to this appeal.  App. 41.

compensation benefits are property within the meaning of the Fifth Amendment to the United States Constitution and access to administrative and judicial review to resolve disputed claims is an entitlement under the Act.  The District provides the exclusive remedy for injured public sector employees.  D.C. Code § 1-623.02(a); *see also Newman v. District of Columbia*, 518 A.2d 698, 705 (D.C. App. 1986)(District exclusivity is based upon a "'*quid pro quo'* in which workers' give up private rights in exchange for expeditious, humanitarian administrative process").

During the relevant period, the District was required to make "a finding of facts and make an award for or against the payment of compensation," D.C. Code § 1-623.24(a), with regards to claims filed by employees seeking disability benefits.  App. 135.  The Act also authorized the District to modify a recipient's existing benefits upon "reason to believe that a change of condition has occurred." D.C. Code § 1-623.24(d).  App. 135–136.  Although D.C. Code § 1-623.24(b)(1) provided during the relevant period that an employee aggrieved by a decision of the District might immediately request an evidentiary hearing, App. 135, then-unwritten municipal policy barred evidentiary hearings until after the employee

exhausted an *extra*-statutory administrative reconsideration process.[7]

## Unwritten Reconsideration Policy

Although the specifics of the District's unwritten reconsideration policy remain murky at best, this much is clear: (1) the policy prohibited the modification of benefits until after issuance of an appealable reconsideration order,[8] (2) the policy prohibited evidentiary hearings until after issuance of an appealable reconsideration order, *see*, e.g., App. 73, and (3) a reconsideration order that remands the matter for further administration is not appealable. App. 70.

## Appellants

### Louis Beale

On January 29, 2002, the District terminated Beale's benefits prior to addressing his request for reconsideration. App. 23. On March 29, 2002, the

---

[7]The District of Columbia Council enacted "the Disability Compensation Effective Administration Amendment Act of 2004, D.C. Act 15-685, 52 D.C. Reg. 1449 (Jan. 4, 2005), which became effective April 5, 2005. In relevant part, the Act *formalizes* the *thirty-day reconsideration period* and prohibits any termination of benefits either during that period or prior to the reconsideration request." *See Lightfoot v. District of Columbia*, 448 F.3d 392, 397 n5 (D.C. Cir. 2006) ("*Lightfoot Appeal*")(emphasis added).

[8] *See Lightfoot Appeal*, 448 F.3d at 402 (D.C. Cir. 2006)(Judge Silberman concurring)("The District insists that, pursuant to its then-unwritten policy, benefits were not terminated until *after* beneficiaries' requests for reconsideration had been addressed and rejected.")(emphasis in original).

District issued a decision  that "referred [the case] back to the claims adjuster."
App.  24.  On July 16, 2002, the DCP issued a second decision denying Beale's
claim for further benefits.  App. 25.  On August 14, 2002, Beale filed a request for
reconsideration of the July 16, 2002 denial order.  App. 25.

After the District failed to respond to his reconsideration, Beale on
December 12, 2002 filed for an evidentiary hearing.  App. 25.  On December 20,
2002, an administrative law judge served the District with an Order a Granting
Pre-Hearing Conference to Plaintiffs, Beale, Downing, Irving, Lyles, Rasheed and
Winstead.[9]  App. 26.  Neither benefits nor evidentiary hearings followed the order.

On July 31, 2003, Beale filed a second hearing application.  App. 26.  On
August 26, 2003, the District rejected hearing applications for Beale, Irving and
Winstead.  App. 26.  On September 3, 2003, Beale, Irving and Lyles served the
District with administrative appeals citing *Lightfoot v. District of Columbia*,
USDA CA No. 01-1484 (October 29, 2001)(*"Lightfoot I")*[10] in support of their
claims for adjudicatory hearings.  App. 26, 15, 36.  On February 20, 2004, Beale,
Lyles and Winstead served the District with a Petition for Review to the District of

_____

[9]Claimant's Elsie Hackett and William Workcuff were also identified by the
administrative law judge as "seeking a formal hearing."  They are not parties to
this action.

[10]Reproduced: App. 138–167.

Columbia Court of Appeals pleading for adjudicatory hearings.  App. 26, 20.  On March 23, 2004, the plaintiffs served the District with responses to a D.C. Court of Appeals order to show cause again arguing for evidentiary hearings.  App. 27, 21.  On April 9, 2004, Beale, Lyles and Winstead forwarded correspondence to the Honorable Vincent Orange, D.C. City Councilman and the Director of the Office of Risk Management appealing for evidentiary hearings.  App. 27, 36, 21.  In June 2004, the plaintiffs served the District, the Mayor and the Director of the Office of Risk Management with the present federal action alleging due process violations for deprivations of benefits without evidentiary hearings.  On June 2, 2006, the District issued an appealable order granting Beale the right to evidentiary hearing.  App. 27.

Mary Waley

On December 17, 2003, the District issued a determination reducing Waley's disability benefits prior to addressing her reconsideration.  App. 32.  On March 26, 2004, the Waley mailed correspondence to the District memorializing her claims examiner's assertion that her pending reconsideration did not stay the December 17, 2003 reduction order.  App. 33, 74.  On April 23, 2007, the District issued Waley an appealable order.  App. 33.

Patricia Newby

On June 24, 2002, the District terminated Newby's benefits prior to
rejecting her request for reconsideration.  App. 28.  On August 2, 2002, the
District remanded her reconsideration "back to the claim examiner . . . for an
evaluation by a pain management specialist."  App. 28-29, 83.  On August 23,
2002, Newby requested a hearing seeking review of the August 2, 2002 remand
order.  App. 83.  On March 17, 2003, the Office of Hearings and Adjudication
dismissed Newby's hearing application and remanded the matter to the Disability
Compensation Program.  App. 83.  On January 23, 2004, Newby made a
subsequent claim for permanent partial disability benefits.  App. 29.  On October
30, 2008, Newby was granted an evidentiary hearing and awarded of past due
benefits.  App. 30.  The District has not issued an appealable order in Newby's
case.

Patricia Hayden

On February 3, 2004, the District issued Hayden a self-described "adhoc"
payment "towards TTD during the period 9/1/2000 – 9/24/2002" in response to an
award of benefits.  App. 10, 75–76.  On February 20, 2004, Hayden filed a request
for reconsideration.  App. 10.  On March 24, 2004, Hayden filed a Petition for
*Writ of Mandamus* suing the District for payment of her award.  App. 10.  On
April 24, 2007, the District issued Hayden an appealable order awarding her

7

unpaid and past due benefits.  App. 11.

James Winstead

On December 5, 2001, Winstead made a claim for permanent partial disability to both upper and lower extremities.  App. 17.  On July 10, 2003, the District awarded Winstead benefits for loss of use of his left upper extremity only. App. 19.  On September 3, 2003, Winstead filed a request for reconsideration.[11] App. 20.  On August 2, 2006, the District issued Winstead an appealable order, App. 21-22, which conveyed jurisdiction for only part of Winstead's claim.  App. 115 at n6.

Reginald Rasheed

On April 2, 2004, the District issued a decision denying in part Rasheed's claim for permanent partial disability.  App. 40-41.  On April 12, 2004, Rasheed filed a request for reconsideration.  App. 41.  Rasheed died February 19, 2006.[12] App. 41.  The District has not issued an appealable order in response to Rasheed's request for reconsideration.  App. 79–80.

Juanita Irving

_____

[11]Additional facts concerning Wintstead's efforts to obtain an evidentiary hearing may be found in Statement of Facts for Plaintiff, Louis Beale, *supra*.

[12]Tiara Rasheed, a beneficiary under the Act, is prosecuting this action. App. 59.

8

On August 28, 2001, the District suspended Irving's benefits effective August 14, 2001 prior to addressing her reconsideration.  App. 14.[13]  On September 3, 2003, Irving filed an administrative appeal seeking an evidentiary hearing.  App. 15.  Before the appeal could be ruled upon, however, the District on December 1, 2003 issued a final order that reversed the suspension of her benefits and remanded to the claims adjuster to "reinstate temporary total disability benefits and medical benefits retroactive to August 14, 2001, and continuing for those periods during which claimant demonstrates she was disabled."  App. 16, 77–78.  After issuance of the decision purportedly reinstating her benefits, Irving withdrew her pending administrative appeal "due to a resolution of all contested issues."  App. 16.

On February 24, 2004, Irving forwarded correspondence with supporting medical documents to the District requesting payment.  App. 16.  On March 1, 2004, Irving followed with proposed calculations, requested prompt payment and again advised the District to contact her to acquire additional information.  App. 16.  On March 24, 2004, Irving served the District with a petition for *mandamus* seeking to compel the payment of her award.  App. 16.

---

[13]For additional facts concerning Irving's efforts to obtain an evidentiary hearing, *see* Statement of Facts for Plaintiff, Louis Beale, *supra*.

9

On July 11, 2008, the District moved to dismiss Irving's March 2008 hearing application for lack of an appealable order.  App. 88–103.  On February 24, 2009, the Office of Hearings and Adjudication granted the District's motion to dismiss Irving's September 15, 2008 hearing application for lack of an appealable order.  App.129–131.

On March 10, 2009, the District without explanation issued Irving a partial payment.  App. 16.  On May 15, 2009, the District moved to dismiss Irving's April 3, 2009 hearing application again for lack of an appealable order.  App. 104–110. In rejecting the District's jurisdictional argument the administrative law judge stated:

> "Employer's argument overlooks that the December 1, 2003 [Final Order on Reconsideration ("FOR")] reinstated [Irving's] temporary total disabilities.  In order for [the jurisdictional] argument to apply, [Irving] would have had to be dissatisfied with the reinstatement of her temporary total disability benefits. *[Irving] did not become dissatisfied until [the District] failed to honor the FOR and pay her retroactive and continuing temporary total disability benefits . . ..* Moreover, the [Act's] regulations required the issuance of an appealable order with March 10, 2009 payment . . .. The District's failure to comply with its own regulations does not deprive [the Administrative Hearings Division] of jurisdiction."

App. 124–125 (emphasis added).  On May 26, 2010, the administrative law judge awarded Irving past due and continuing benefits.  App. 16.  Irving's award was vacated on appeal for lack of jurisdiction as the District has not issued an

appealable order.  App. 62–66.

### George Morgan

On October 17, 2000, the District reduced Morgan's benefits prior to addressing his reconsideration.  App. 11.  On August 3, 2007, the District issued Morgan an appealable order.  App. 12-13.

### Denise Downing

On August 31, 2000, Downing obtained an award for disability benefits retroactive to May 11, 1997 and continuing.  App. 13.  On December 11, 2000, Downing advised the District that she "disputes the amount paid" and requests "an accounting and/or reconciliation of benefits, specifically, the amounts and periods covered for temporary total disability benefits."  App. 13.  On October 9, 2008, the District issued an award payment to Downing for the period May 11, 1997 – September 15, 2000.  App. 14.

### John Lyles[14]

On February 14, 2001, Lyles requested benefits based upon a loss of use of his lower extremities.  App. 34.  On July 24, 2002, the District issued a decision denying Lyles' claim.  App. 35.  On August 14, 2002, Lyles requested

---

[14]John Lyles died on October 20, 2001.  App. 35.  This action is prosecuted by his widow, Doris Lyles, as the representative of his estate.  7/27/10 Tr. at 44-45.

reconsideration.  App. 35.  On August 2, 2006, the District issued Lyles an

appealable order.  App. 36.

Sheila Owens

On March 9, 2004, the District suspended Owens' benefits prior to

addressing her reconsideration.  App. 30.  On April 19, 2006, the District reversed

the termination of benefits and remanded the matter to the claims examiner.  App.

31.  On May 19, 2006, the District issued a notice accepting Owens' claim.  App.

31.

Tara Rogers

On April 2, 2004, the District issued a decision reducing Rogers' benefits

prior to addressing her reconsideration request.  App. 5-6.  On June 16, 2006, the

District issued Rogers an appealable order.  App. 6-7.

## SUMMARY OF ARGUMENTS

A.    Instead of applying the two-part due process analysis adopted in *Mathews v.*

*Eldridge*, 424 U.S. 319 (1976), the district court ruled that in order to establish due

process violations, the plaintiffs must demonstrate that the District had no

reasonable basis for their lengthy deprivations of benefits without evidentiary

hearings.  In the instances where the district court found that the plaintiff suffered

no deprivation, the court erroneously determined that the deprivations were

justified instead of deciding whether the procedures were deficient.

B.     The District clearly knew that lengthy deprivations of disability benefits without some form of adjudicatory hearing would violate procedural due process. The District clearly knew that the plaintiffs were suffering lengthy deprivations of disability benefits yet failed to provide evidentiary hearings.  The district court's conclusion that the constitutional violations, if any, were due to the negligence of a few District employees is unreasonable for the sheer number of District administrators who were publicly and demonstrably aware of the plaintiffs' lengthy deprivations, yet failed to provide evidentiary hearings.

C.     As a beneficiary specified by D.C. Code § 1-623.09, Tiara Rasheed is a party of interest with standing to substitute for the estate of her deceased father, Reginald Rasheed.

## **ARGUMENT**

### A.     **Procedural due process claims are measured in accordance with _Mathews v. Eldridge_.**

Instead of applying the two-part due process analysis adopted in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the district court ruled that in order to establish a due process violation, the plaintiffs must demonstrate that the District had no reasonable basis for their lengthy deprivations without evidentiary hearings.  App.

13

48, 59.  This Court reviews the district court ruling de novo.

Under the two-part due process analysis approved in this jurisdiction for "judging the adequacy of a government's *procedures* that deprive a person of life, liberty, or property," s*ee Lightfoot Appeal*, *supra*, 448 F.3d at 400 (Judge Silberman concurring) (emphasis in original), courts must determine whether the plaintiff has been "deprived of a protected interest, and, if so, what process was his due."  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).  Because the plaintiffs herein have a property interest in the continued receipt of disability benefits, *see Lightfoot Appeal* at 395, the inquiry turns to what process they were due.

It is well-settled that "some form of hearing" is required before a person is finally deprived of a protected property interest.  *See Logan*, 455 U.S. at 434 (citation omitted).  *Logan* further "acknowledged that the timing and nature of the required hearing 'will depend on the appropriate accommodation of the competing interests involved.'" *Id.* at 434 (citations omitted).  The Court explained that:

> "[t]hese include the importance of the private interest and the length or finality of the deprivation, *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. at 19, and *Mathews v. Eldridge*, 424 U.S. at 334 – 335; the likelihood of governmental error, *see id.*, at 335; and the magnitude of the governmental interests involved, *see ibid.*, *Wolff v. McDonnell*, 418 U.S. at 561 – 563."

14

*Logan*, 455 U.S. 422, 434.

*Private Interest*

As observed in *Lightfoot I*, the plaintiffs have a substantial interest in

continued and appropriate benefits.  App. 138–167.  *Lightfoot I* observed:

> "[t]he harm to Plaintiffs is significant, as Plaintiffs note that their
> 'entire income' is derived from their disability payments under the
> [Act].  As acknowledged by the *Mathews* Court, a plaintiff in such
> circumstances is unlikely to find suitable employment upon the
> termination of benefits.  Likewise, termination of benefits for
> Plaintiffs in this case may result in an immediate loss of adequate
> medical care due to the fact that Plaintiffs receive medical care and
> treatment under the [Act].  Plaintiffs further emphasize that the
> immediate or nearly immediate termination of benefits which exists
> under District practice is significantly harmful because it not only
> deprives Plaintiffs of access to medical treatment, but deprives them
> of an opportunity to mount a challenge to Defendant's action."

*Id*. at 12 (citations omitted).

*Duration of the Deprivation*

The trial court concluded that Rogers suffered a deprivation without right to

evidentiary hearing from at least April 9, 2004 to June 16, 2006 or more than two

years, App. 50; that Hayden experienced a deprivation without right to hearing

from at least February 20, 2004 to April 24, 2007 or more than three years, App.

51; that Morgan experienced a similar deprivation from November 14, 2000 to

August 3, 2007 or approximately eight years, App. 52; that Downing suffered a

15

deprivation from December 11, 2000 to October 9, 2008 or <u>approximately eight</u>

<u>years</u>, App. 53; Owens experienced a deprivation without right to evidentiary

hearing from April 9, 2004 to April 19, 2006 or <u>more than two years</u>, App. 57; that

Waley experienced a similar deprivation from January 7, 2004 to April 23, 2007 or

<u>more than three years</u>, App. 57; and that Lyles experienced a deprivation without

right to evidentiary hearing from at least August 14, 2002 to August 2, 2006 or

<u>two years</u>, App. 58.

The trial court apparently found the deprivations of Beale, Winstead, Irving,

Rasheed and Newby otherwise justified and, therefore, found no period of

deprivation for these plaintiffs.  App. 59.  This was error.  *See Carey v. Piphus*,

435 U.S. 247, 263 (1978)(Procedural due process concerns not whether the

"deprivation is justified [but whether the] procedures are deficient."); *see also*

*Lightfoot Appeal* at 401 ("The issue is always, in [] due process cases, whether or

not the claimant has had a fair opportunity . . . to present his case and not whether

the agency's substantive decision was reasonable.).  Moreover, "the right to

procedural due process is 'absolute' in the sense that it does not depend upon the

merits of a claimant's substantive assertions."  *Carey* at 266.  Therefore, while the

substance of an order is exclusively within the purview of the District – benefits

may be granted, denied, modified, suspended or terminated – *see Lightfoot, Appeal*

16

at 399 ("the DCAPA's judicial review provision places exclusive jurisdiction in the D.C. Court of Appeals to review District agency action.")(citation omitted), *whe*n it issues implicates process and, thus, was the only issue properly before the trial court.  *Id.* at 398 (process is implicated when beneficiary is deprived of "capacity to challenge the termination [of benefits]."

Put another way, a plaintiff who may not be entitled to benefits is nonetheless entitled to process.  In determining the duration of these plaintiffs' deprivations, therefore, the court needed make only two findings.  First, the court should have determined when the plaintiff requested reconsideration.  Second, the court needed do no more than determine when the District issued an appealable response.

The district court found that Beale was deprived of benefits while awaiting reconsideration in from January 29, 2002 to June 2, 2006 or <u>four years and four months</u>.  App. 27, 56.  As the District has failed and continues to fail to issue an appealable order in response to his April 12, 2004 request for reconsideration, App. 41, Rasheed has been and continues to be deprived of hearing rights and benefits for <u>eight years and 10 months continuing</u>.  App. 79–80.  Likewise, as the District has failed and continues to fail to issue an appealable order in response to *all* claims in Winstead's September 3, 2003 request for reconsideration, App. 20,

17

he has been and continues to be deprived of hearing rights and benefits for <u>nine years and eight months continuing</u>.  App. 115 at n6.

Similarly, as the District has failed and continues to fail to issue an appealable order in response to her June 28, 2002 request for reconsideration, App. 28, Newby has been and continues to be deprived of hearing rights and benefits for <u>11 years and eight months continuing</u>.  Finally, as the District has failed and continues to fail to issue an appealable order in response to her September 25, 2001 request for reconsideration, App. 15, Irving has been and continues to be deprived of hearing rights and benefits since August 28, 2001 or <u>11 years and five months continuing</u>.  App. 62–66.

### *Likelihood of Governmental Error*

In this element of the analysis, the court must "weigh the risk of an erroneous deprivation by examining the procedures involved for termination." *Lightfoot I* at 13; *see also Mathews* 424 U.S. at 343.  The record clearly demonstrates that contrary to the District's claims in *Lightfoot Appeal*, *see* n8, *supra*, the disability benefits of seven plaintiffs Waley, Newby, Owens, Irving, Morgan, Beale and Rogers were in fact modified prior to conclusion of the District's *extra*-statutory reconsideration period.  Likewise, the record clearly demonstrates that the plaintiffs' reconsideration periods were unconscionably

18

longer than those contemplated under the District's policy.  *See Lightfoot I* at 19

("According to the District, . . . [the plaintiffs] could seek reconsideration by

written submission and receive a decision within two or three weeks."); *see also*

*Lightfoot Appeal* at 395(same).  Therefore, the record clearly demonstrates that the

constitutional safeguards actually employed in the plaintiffs' cases were

substantially less than those sanctioned by this Court in *Lightfoot Appeal*.

<u>*Governmental Interest*</u>

The record is simply without evidence of a governmental interest.  The

record clearly demonstrates that the District's unwritten reconsideration

procedures simply were not followed.  Even a cursory review of the record

demonstrates that the plaintiffs were deprived of disability benefits prior to the

conclusion of the reconsideration process and that reconsideration took

substantially longer than the two- to three-weeks claimed by the District.

Obviously, the District can claim no legitimate interest in violating its own

constitutional safeguards.  *See Logan* at 435 (State "no longer has any appreciable

interest in defending [repealed] procedure.").  Moreover, even where it may be

argued that municipal policy was not necessarily violated, the District has failed to

proffer any legitimate governmental interest in delaying payment of awarded

benefits or contesting hearings for plaintiffs whose benefits were modified or

19

denied.  In light of the above analysis, it can only be concluded that the District

violated the plaintiffs' due process rights.

**B.**     **The District's inaction in the face of the plaintiffs' numerous complaints of lengthy deprivations of benefits without evidentiary hearings gives rise to or endorses a policy or custom under *Monell*.**

The plaintiffs seek review of the district court's conclusion that their

lengthy deprivations without evidentiary hearings were the result of the negligence

of a few employees and not attributable to a policy or custom of the District.  App.

69.  This Court reviews the district court decision de novo reversing the trial court

only if no reasonable juror could reach the verdict rendered in the case.  *See*

*Daskalea v. District of Columbia*, 227 F.3d 433 (D.C. Cir. 2000).

A municipality is a person who can be held liable under section 1983, but

only when the municipality's "policy or custom . . . inflicts the injury."  *Monell v.*

*Department of Social Services*, 436 U.S. 658, 694 (1978).  A city's inaction,

including it failure to train or supervise it employees adequately, constitutes a

"policy or custom" under *Monell* when it can be said that the failure amounts to

"'deliberate indifference' towards the constitutional rights of a person in its

domain."  *City of Canton v. Harris*, 489 U.S. 378, 388-389 & n7

(1989)(recognizing municipal liability under §1983 for failure to train adequately);

*see Rogala v. District of Columbia*, 161 F.3d 44, 56 (D.C. Cir. 1998)(recognizing

20

liability for failure to train or supervise); *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997)(noting that "inaction giving rise to or endorsing a custom" can be basis of §1983 liability).

> **i)** **The District clearly knew that lengthy deprivations of disability benefits without some form of adjudicatory hearing would violate procedural due process.**

In short, the District clearly knew "'that a lengthy [deprivation of benefits] without any adjudicative hearing of any type' would violate procedural due process." *Carey* at 252 (citation omitted); *see also Id*. at 259 ("Procedural due process rules are meant to protect persons . . . from the mistaken or unjustified deprivation of life, liberty or property."). Furthermore, this Court has held that prior litigation may provide the District with sufficient notice of constitutional risks to sustain a §1983 damage award. *See Daskalea* at 442 ("[G]iven the notice afforded by the *Women Prisoners* order and Daskalea's own letters, and the open and notorious nature of the continued abuse, a jury could reasonably have concluded that the District was deliberately indifferent to the constitutional rights of its women prisoners.").[15]

───────────

[15]*See Women Prisoners v. District of Columbia*, 877 F.Supp. 634 (D.D.C. 1994); *see also Women Prisoners v. District of Columbia*, 93 F.3d 910, 929, 931 (D.C. Cir. 1996)(The district court found a pattern of rape and sexual assault – coupled with other forms of sexual harassment, inadequate or nonexistent staff training, and retaliation against women who filed complaints – that rose to a level

Even more compelling than *Daskalea*, we have in *Lightfoot* not one, but several prior court opinions that clearly put the District on notice of the constitutional risks of lengthy deprivations of benefits without evidentiary hearings.[16]  In *Lightfoot Appeal*, this Court cited early concerns about the government's unwritten reconsideration procedures:

> "In an October 2001 opinion, . . . The district court thought it particularly troubling that even if beneficiaries received the thirty-day grace period during which they could request reconsideration, there was no guarantee that either a beneficiary's reconsideration request would be resolved during that period or that the grace period could be extended to allow for bureaucratic delay in responding to the reconsideration request."

---

of objective cruelty sufficient to violate the Eighth Amendment.  *Women Prisoners* issued approximately seven months before Daskalea's abuse.).

    [16]*Lightfoot* concerned a class action brought by disability compensation recipients, such as the ones in the present action, alleging, among other things, that "'there is no statutory deadline by which the post-modification hearing must be held.'  Thus . . . there is no guarantee that a post-termination hearing will be prompt."  *Lightfoot I* at 4 n2.  Although the district court concluded that the plaintiffs "were substantially likely to prevail on the merits," it nevertheless denied the injunction finding that "the equitable factors weighed against such relief." *Lighfoot I* at 29; *see also Lightfoot Appeal*, 488 F.3d at 395.

    For a comprehensive factual background of this case, *see Lightfoot v. District of Columbia*, 339 F.Supp.2d 78 (D.D.C. 2004)(*Lightfoot II*)(granting plaintiffs' motion for partial summary judgment), *rev'd on appeal*, 488 F.3d 392 (D.C. Cir. 2006); *Lightfoot v. District of Columbia*, 355 F.Supp.2d 414 (D.D.C. 2005)(*Lightfoot III*)(denying District's motion for reconsideration); *see also Lightfoot Appeal*, 488 F.3d 392 (D.C. Cir. 2006).

*Id*. at 395 (citations omitted).  The trial court "found the 'looseness of the [Act's] reconsideration process and the lack of any enforceable grace period' problematic."  *Lightfoot I* at 16; *see also Lightfoot Appeal* at 395.

In addition to *Lightfoot I*, and only a few months after the plaintiffs filed the action presently before the Court, the district court issued a second opinion in *Lightfoot II*.  In *Lightfoot II*, the district court acknowledged that:

> "the courts must focus on the *potential* for inherent harm in unbridled decision-making. . . . Written standards are the most important and valuable check against the potential for arbitrary administration: they act as explicit, bedrock guides for the actions of decisionmakers and ensure that benefit programs are administered in a consistent and transparent manner."

*Id*. at 90 (emphasis in original).  In the aftermath of the prodigious history of due process litigation concerning the Act's deprivation procedures, the District was undoubtedly aware of the potential constitutional risks associated with lengthy deprivations of benefits without evidentiary hearings.[17]

### ii)    The District clearly was aware of the plaintiffs' lengthy deprivations without evidentiary hearings.

As in *Daskalea*, the plaintiffs' written complaints, respective letters and public pleadings clearly put the District on notice that they were being deprived of benefits without adjudicatory hearings.  From the record, the District has had

---

[17]*See* n7, *supra*.

ample opportunity to hold hearings on the plaintiffs' claims.

On December 20, 2002, an administrative law judge notified the District that the claims administrator "has failed, declined or refused to act in order to afford [the plaintiffs] the opportunity for formal hearing, grant the payment of a schedule award or process the payment of previously granted . . . benefits."  App. 72.  The administrative judge further explained that the Pre-Hearing Conference:

> "shall be scheduled in this case to allow you, and the Office of Corporation Counsel, which represents the various District of Columbia agencies in purported contested cases like these, to express your arguments orally, and be prepared to brief the relevant issues, the most important of which may be jurisdiction.  An accompanying order has been enclosed herein and it is noted that Mr. McDougald, having been served with each of the individual cases, would, therefore, *be on notice* of the relevant case numbers.

(emphasis added).  App. 72.

An August 26, 2003 letter from the Office of Hearings and Adjudications rejecting several of the plaintiffs' hearing applications demonstrates a gross and systemic unfamiliarity with the District's supposed then-unwritten prohibition against modifying benefits prior to addressing reconsideration requests or its goal of timely disposition of reconsideration requests.  App. 73.  The rejection letter explained that the Office of Hearings and Adjudication lacked jurisdiction to hear the applications "since a Final Oder (Denial of Award Order) has not yet been

24

rendered by the Disability Compensation Manager" and that it  had "also spoken

to Ms. Daily, DCP, Compensation Manager, and she says that when a Form 5

(Notice of Determination by Examiner) dose *(sic)* not give an option then a

reconsideration needs to be requested in writing to her office before a formal

hearing can be requested."  App. 73.

On September 3, 2003, Beale, Winstead, Irving and Lyles served the

District with administrative appeals seeking evidentiary hearings.  App. 15, 20, 26,

36.  On March 23, 2004, several plaintiffs served the District with responses to a

District of Columbia Court of Appeals show cause order in which they pleaded for

evidentiary hearings.  App. 21, 27.  On March 24, 2004, Hayden and Irving served

the District with petitions for mandamus in which they complained of lengthy

deprivations of benefits without formal hearings.  App. 10, 16.  On April 9, 2004,

Beale, Lyles and Winstead forwarded correspondence to a city councilman and the

director of the Office of Risk Management complaining about the inability to

obtain evidentiary hearings.  App. 21, 27, 36.

Finally, the District cannot reasonably contend that the present action failed

to put its policymakers on notice that the plaintiffs were suffering lengthy

deprivations of benefits without evidentiary hearings.  Simply put, if District

policymakers did not recognize that gross and deliberate violations of then-

25

unwritten procedure were causing the plaintiffs unreasonably lengthy deprivations of benefits without affording adjudicatory hearings then they surely should have.

The district court's conclusion that the plaintiffs' lengthy deprivations without adjudicatory hearings were due to the negligence of a few District employees is implausible for the sheer number of District administrators who were demonstrably indifferent toward numerous complaints and the notorious and public nature of the violations of the District's constitutional safeguards that were at the root of the plaintiffs' lengthy deprivations.  The district court ruling necessarily implicates not only employees of the District's various Third-Party Administrators but also District employees at the Disability Compensation Program, the Office of Risk Management, the Department of Employment Services, the Office of the Attorney General, the District of Columbia Court of Appeals and the office of at least one city councilman.  It cannot be reasonably concluded that so many governmental employees, working for so many different agencies, across so many different departments, acted in concert to negligently delay the processing of the plaintiffs' reconsideration requests without the District, itself, being implicated.  *See Daskalea* at 442 (D.C. Cir. 2000)(An unwritten "policy cannot insulate a municipality from liability where there is evidence, as there was here, that the municipality was deliberately indifferent to the policy's

26

violation") citing *Ware v. Jackson County*, 150 F3d 873, 882 (8th Cir.

1998)("[T]he existence of . . . policies of a defendant are of no moment in the face

of evidence that such policies are neither followed nor enforced.").

The more plausible explanation is that the District failed to adequately train

employees to properly implement constitutional safeguards and to promptly

provide hearings when the plaintiffs complained about lengthy deprivations.  *See*

*Canton*, 489 U.S. 390 n.10)(recognizing municipal liability where officers "so

often violate constitutional rights that the need for further training must have been

plainly obvious.").  Indeed, that District employees were generally unfamiliar with

constitutional safeguards reasonably explains their repeated indifference towards

the plaintiffs' public, pre-mature and years-long deprivations that, according to

District policy, should not have occurred.  *But see*, e.g., App. 74.

### iii)    The District's inaction in the face of the plaintiffs' lengthy deprivations without evidentiary hearings gives rise to or endorses a policy or custom under *Monell*.

As foreshadowed in *Lightfoot I*, each plaintiff in this case has spent several

years *temporarily* deprived of at least some level of benefits while awaiting a

response to his or her reconsideration request.  *Id*. at 16; *see also Lightfoot Appeal*

at 395 (same).  The District's inaction in the face of the plaintiffs' ongoing and

lengthy deprivations without evidentiary hearings was just too pervasive and

27

public not to give rise to or endorse a policy or custom under *Monell*. *See Logan*,

*supra*, at 436 (It's not an employee's "error, but the 'established state procedure'

itself that [deprives them of benefits] without according . . . proper procedural

safeguards."). Moreover, unlike *Daskalea* where the record was without evidence

that the District openly contributed the misconduct of its employees, here, the

record supports the conclusion that the District perpetuated, even defended, the

ongoing constitutional violations. In each instance where plaintiffs attempted

legal challenges to their lengthy deprivations, it was the District that opposed the

action. *See*, e.g., App. 62–66, 70, 73, 74, 79–80, 88–103, 104–110, 120–128,

129–131. Indeed, the District has not only failed to acknowledge the obvious

constitutional violations occurring in these cases, it has compounded the plaintiffs'

already lengthy delays through manipulation of unwritten rules in a deliberate

attempt to confound the trial court and to purposely deprive the plaintiffs of the

process to which they clearly are due.[18]

---

[18]As the district court observed in 2004, the District took "a 'trust us'
approach by relying on 'well-established' but unwritten methods of adjustment
that very well may be 'adjusted' any time an individual complains about his/her
treatment. In doing so, [the District] attempt[s] to paint Plaintiffs into an
impossible corner where Plaintiffs cannot show that they have been treated in an
ad hoc, arbitrary manner because they have nothing solid against which to
compare their treatment: without written standards and an understanding for the
rationale of the decision to deny their benefits, Plaintiffs would appear to have
obvious difficulties pointing to legal and factual error." *Lightfoot II*, *supra*, 339

In light of the substantial property interests involved, prompt, if not immediate, government action was required.  *See Newman*, *supra*.  In this regard, the District could have either restored benefits in cases of adverse modifications, paid awarded benefits or simply issued appealable orders in disputed cases. However, the District did nothing to evidence a consideration of the plaintiffs' constitutional rights.

### C.    Tiara Rasheed is a proper substitute for her deceased father.

In denying the motion to substitute parties, App. 59, the district court improperly ruled by implication that death benefits under D.C. Code § 1-623.09 become property of the decedent's estate.  D.C. Code § 1-623.09 provides, in relevant part:

> "the compensation specified by the schedule that is unpaid at his or her death, . . . shall be paid:
>
> . . . ( C) *To and for* the benefit of the persons then in being within the classes . . . specified by this section."

*Id*.  (emphasis added).  App. 132.  As person then in being within the classes specified by Section 2309, Tiara Rasheed is a person of interest with standing to substitute for the estate of her deceased father, Reginald Rasheed.

---

F.Supp.2d at 90.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Honorable

Court to pass an order reversing the district court's judgment in favor of

defendants, finding in favor of the plaintiffs and remanding this matter for further

appropriate disposition.

Respectfully Submitted,

LAW OFFICES OF KIRK D. WILLIAMS

Dated:02/17/2013          By:_____/s/_____
                          Kirk D. Williams, Esquire #54270
                          1629 K Street, NW
                          Suite 300
                          Washington, DC 20036
                          (202) 726-0480
                          kdwatlaw@lycos.com

                          Counsel for Appellants